******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BENJAMIN CRUZ
(AC 36420)

Beach, Keller and Prescott, Js.

*Argued December 8, 2014—officially released March 10, 2015*

(Appeal from Superior Court, judicial district of New Britain, Handy, J. [criminal judgment]; D'Addabbo, J. [motion to correct].)

*Benjamin Cruz*, self-represented, the appellant (defendant).

*Jacob L. McChesney*, special deputy assistant state's attorney, with whom, on the brief, was *Brian Preleski*, state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. Although a sentencing court is divested of subject matter jurisdiction over a criminal case once the defendant has begun serving his or her sentence, the court retains jurisdiction to correct an illegal sentence or a sentence imposed in an illegal manner. To invoke this limited jurisdiction, however, a defendant must challenge either the legality of the sentence or the manner in which the sentencing proceeding was conducted. In this appeal, the self-represented defendant, Benjamin Cruz, claims that the trial court improperly dismissed his motions to correct an illegal sentence because it concluded that they were predicated on alleged improprieties that did not implicate the legality of his sentence or the manner in which the sentencing proceeding was conducted. Because we agree that the defendant's motions did not raise any claims falling within the purview of a motion to correct an illegal sentence and, consequently, did not invoke the court's limited postsentencing jurisdiction, we affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The defendant pleaded guilty to manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3) and evasion of responsibility in the operation of a motor vehicle in violation of General Statutes § 14-224 (a) in connection with an incident in which he fatally struck a school crossing guard with his vehicle.[1] Pursuant to a plea agreement, the trial court, *Handy, J.*, imposed a total effective sentence of nineteen years incarceration.

The defendant subsequently filed two motions to correct an illegal sentence pursuant to Practice Book § 43-22. In the first motion, he claimed that his sentence was illegal because the state had withheld exculpatory evidence from him in violation of *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).[2] In the second motion, the defendant claimed that his sentence was imposed in an illegal manner because the sentencing court impermissibly participated in pretrial plea negotiations with defense counsel and the state.

The trial court, *D'Addabbo, J.*, conducted hearings on the defendant's motions over two days in September and October, 2013. At the October, 2013 hearing, the defendant, after electing to proceed without the assistance of counsel, presented argument and evidence in support of his motions. The trial court thereafter dismissed the defendant's motions, concluding that they failed to raise any claims that would invoke the jurisdiction of the court for the limited purpose of correcting an illegal sentence. Specifically, the court concluded that, with regard to the ground raised in the defendant's first motion, any *Brady* violation was the result of actions taken by the prosecutor, not the sentencing

court. With regard to the ground raised in the defendant's second motion, the court concluded that the defendant's claim that the sentencing court had impermissibly participated in plea negotiations was not a valid basis under our common law to conclude that the defendant's sentence was illegal or had been illegally imposed. Additionally, the court opined that, even if it had jurisdiction over the defendant's claims, they would nonetheless fail on their merits. The defendant subsequently appealed the court's dismissal of his motions to this court. Additional facts will be set forth as necessary.

The defendant claims on appeal that the trial court improperly determined that it did not have jurisdiction to adjudicate the defendant's motions to correct an illegal sentence.[3] Specifically, the defendant asserts that the court's determination that it lacked jurisdiction was improper because (1) the state's alleged *Brady* violation deprived him of his right to speak in mitigation at his sentencing, and (2) the sentencing court impermissibly participated in pretrial plea negotiations. For reasons we now set forth, we conclude that the trial court properly determined that it lacked jurisdiction to adjudicate the defendant's motions to correct an illegal sentence.

We begin by setting forth the relevant legal principles and standard of review governing our analysis of the defendant's claims. "The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." (Internal quotation marks omitted.) *State* v. *Lawrence*, 281 Conn. 147, 153, 913 A.2d 428 (2007). Under the common law, a trial court's jurisdiction over a criminal case terminates once the defendant has begun serving his or her sentence. *State* v. *Ramos*, 306 Conn. 125, 134, 49 A.3d 197 (2012); *State* v. *Reid*, 277 Conn. 764, 775, 894 A.2d 963 (2006). An exception to this general principle exists, however, that permits a trial court to retain jurisdiction to correct an illegal sentence. *State* v. *Parker*, 295 Conn. 825, 836, 992 A.2d 1103 (2010); *State* v. *Daniels*, 207 Conn. 374, 387, 542 A.2d 306, after remand for articulation, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). This exception is recognized in Practice Book § 43-22, which provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

"[A]n illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. By contrast . . . [s]entences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's

right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . .” (Internal quotation marks omitted.) *State* v. *Smith*, 150 Conn. App. 623, 635, 92 A.3d 975, cert. denied, 314 Conn. 904, 99 A.3d 1169 (2014). These definitions are not exhaustive, however, and “the parameters of an invalid sentence will evolve”; *Parker* v. *State*, supra, 295 Conn. 840; as additional rights and procedures affecting sentencing are subsequently recognized under state and federal law.

Thus, to invoke the jurisdiction of a trial court to correct an illegal sentence, a defendant must allege that his or her sentence is illegal, or has been illegally imposed, for one of the reasons recognized under our common law. See *State* v. *Lawrence*, supra, 281 Conn. 155 (“for the trial court to have jurisdiction to consider the defendant’s claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court has jurisdiction to review”). Determining whether a defendant has satisfied this jurisdictional threshold presents a question of law over which our review is plenary. See *State* v. *Bozelko*, 154 Conn. App. 750, 763 n.16,    A.3d    (2015) (“[c]onstruction of the effect of pleadings is a question of law and, as such, our review [of the defendant’s allegations] is plenary” [internal quotation marks omitted]); *State* v. *Meikle*, 146 Conn. App. 660, 662, 79 A.3d 129 (2013) (“because [a] determination regarding a trial court’s subject matter jurisdiction is a question of law, our review is plenary” [internal quotation marks omitted]). With these principles in mind, we turn to the defendant’s claims.

I

The defendant first claims that his allegation that the state withheld material, exculpatory evidence in violation of *Brady* v. *Maryland*, supra, 373 U.S. 83,[4] was sufficient to invoke the trial court’s jurisdiction to adjudicate his motion to correct an illegal sentence because the state’s actions denied him a meaningful opportunity to speak in mitigation of his sentence. In support of this claim, the defendant identifies two pieces of evidence that he argues the state improperly failed to disclose and that would mitigate his sentence: eyewitness statements that identify him as the passenger, rather than the driver, of the vehicle that struck the victim, and an accident reconstruction report that concluded that the speed of his vehicle was 44.92 miles per hour at the time of the accident.

The state responds that the defendant’s *Brady* claim falls outside the purview of a motion to correct an illegal sentence because it challenges his underlying conviction, rather than his sentence or the sentencing

proceeding. For reasons we now discuss, we agree with the state.

"It is well settled that [t]he purpose of [Practice Book] § 43-22 is not to attack the validity of a conviction by setting it aside but, rather to correct an illegal sentence or disposition . . . ." (Internal quotation marks omitted.) *State* v. *Saunders*, 132 Conn. App. 268, 271, 50 A.3d 321 (2011), cert. denied, 303 Conn. 924, 34 A.3d 394 (2012). Thus, "[i]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the [proceedings] leading to the conviction, must be the subject of the attack." *State* v. *Lawrence*, supra, 281 Conn. 158.

In his first motion, the defendant claimed that the evidence allegedly withheld by the state undermines the state's case and calls into question whether he actually engaged in the conduct underlying his conviction. Specifically, he contended that the allegedly suppressed evidence was "highly favorable to [him] and his position of defense to the charge of manslaughter [in the] first degree," and that "the accident reconstruction reports . . . do not support the charge of manslaughter [in the] first degree." Additionally, he claimed that the allegedly suppressed evidence "would have discredited [the state's] allegation that the defendant was the operator and sole occupant of the motor vehicle at the time that it struck and caused the death of [the victim] . . . ."

These claims effectively attempt to cast doubt on the defendant's guilt, and, therefore, amount to an attack on the defendant's conviction, rather than his sentence or the sentencing proceeding. Significantly, the defendant makes no claim in his written motion to correct that any of the allegedly suppressed evidence mitigates the severity of his sentence. Instead, in his motion, he focuses solely on how the state's alleged *Brady* violation deprived him of evidence that would have weakened the state's case and bolstered his defense. The strength of the state's case was no longer in issue at sentencing, however, as the defendant's guilty plea conclusively resolved that he committed the offenses charged by the state. See *Williams* v. *Commissioner of Correction*, 120 Conn. App. 412, 419, 991 A.2d 705 ("a guilty plea is an admission of all the elements of a formal criminal charge" [internal quotation marks omitted]), cert. denied, 297 Conn. 915, 996 A.2d 279 (2010). The sentencing hearing was not the appropriate forum to relitigate that determination. See *Gonzalez* v. *Commissioner of Correction*, 308 Conn. 463, 478 n.5, 68 A.3d 624 ("sentencing does not concern the defendant's guilt or innocence" [internal quotation marks omitted]), cert. denied sub nom. *Dzurenda* v. *Gonzalez*,     U.S.    , 134 S. Ct. 639, 187 L. Ed. 2d 445 (2013).

We acknowledge that at the hearing before the trial court, the defendant attempted to expand the scope of

his motion to include the claim he raises on appeal that the state's *Brady* violation deprived him of the right to speak in mitigation at his sentencing. Even so, we find no indication in the record that the defendant ever formally requested permission from the trial court to amend his motion, nor does the court's decision indicate that it considered the additional ground raised by the defendant at the hearing. Accordingly, in considering the defendant's appeal, we limit our review to only those claims raised in the defendant's motion to correct. Because the defendant's *Brady* claim, as set forth in his motion to correct, challenges only his underlying conviction, it cannot provide the trial court with a basis on which to exercise its limited jurisdiction.[5]

Even assuming, however, that the defendant raised a colorable claim at trial that the state withheld evidence material to the issue of sentence mitigation, this court's decision in *State* v. *Delgado*, 116 Conn. App. 434, 438–40, 975 A.2d 736 (2009), forecloses the defendant from pursuing that claim by way of a motion to correct an illegal sentence. In *Delgado*, the defendant filed a motion to correct an illegal sentence with the trial court claiming, inter alia, that "the prosecution failed to disclose information favorable to the defendant and relevant to sentencing." Id., 439. The trial court denied the defendant's motion on its merits. Id., 436.

On appeal in *Delgado*, we reversed the trial court's judgment and concluded that the court should have dismissed the defendant's claim for lack of subject matter jurisdiction. Id., 440. In doing so, we determined that the defendant's claim that the prosecutor withheld exculpatory evidence material to sentencing failed to "attack the substance of what occurred during the sentencing portion of the hearing." Id., 439. Consistent with that determination, we held that the defendant's claim "[fell] outside of the limited circumstances in which a court retains jurisdiction over a defendant once that defendant has begun serving his sentence." Id., 439–440. Because the claim the defendant now raises on appeal is indistinguishable from the claim this court addressed in *Delgado*, we conclude, as we did in that case, that the trial court lacked jurisdiction to consider it.

II

The defendant next claims that his sentence was imposed in an illegal manner because the sentencing court impermissibly participated in pretrial plea negotiations. Specifically, the defendant claims that Practice Book §§ 39-7 and 39-16 limit the role of a trial court during plea negotiations to indicating whether it will accept or reject a proposed disposition. The defendant further argues, relying on *State* v. *Revelo*, 256 Conn. 494, 775 A.2d 260, cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001), that the practice of having judges participate in plea negotiations has been frequently criticized in this state. We are not persuaded

that the defendant's claim falls within the trial court's limited jurisdiction.

As an initial matter, we observe that the defendant's claim does not fall within any of the categories of cases that we have previously recognized as invoking the court's jurisdiction to determine whether the sentence was imposed in an illegal manner. "[S]entences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 150 Conn. App. 635. The defendant must therefore rely on a due process or procedural right not previously recognized in our case law so as to implicate the court's jurisdiction over cases involving claims that the sentence was imposed in an illegal manner. See *Parker* v. *State*, supra, 295 Conn. 840.

The defendant contends that Practice Book §§ 39-7 and 39-16 prohibit a sentencing court from participating in plea negotiations by limiting its participation in the plea negotiation process to indicating whether it will accept or reject a proposed disposition. A plain reading of the text of these provisions reveals, however, that they contain no such limitation. Practice Book § 39-7 provides: "*If a plea agreement has been reached by the parties*, which contemplates the entry of a plea of guilty or nolo contendere, the judicial authority shall require the disclosure of the agreement in open court or, on a showing of good cause, in camera at the time the plea is offered. Thereupon the judicial authority may accept or reject the agreement, or may defer his or her decision on acceptance or rejection until there has been an opportunity to consider the presentence report, or may defer it for other reasons." (Emphasis added.) Practice Book § 39-16 further provides: "*If the parties reach an agreme*nt which contemplates the entry of a plea of guilty or nolo contendere, they may advise the judicial authority in advance of the plea. The judicial authority may indicate whether it will concur in or reject the proposed disposition." (Emphasis added.) These provisions clearly contemplate the trial court's responsibilities *after* a plea arrangement is reached, and are silent as to the court's role during the plea negotiation process. Moreover, they contain no proscriptive language indicating that the court's role in pretrial plea negotiations is limited to accepting or rejecting proposed dispositions. Accordingly, we find unpersuasive the defendant's attempt to base his claim that his sentence was imposed in an illegal manner on an alleged violation of Practice Book §§ 39-7 and 39-16.

The defendant nevertheless argues that judicial participation in pretrial plea negotiations is disfavored under our case law. In support of this claim, he relies on, inter alia, *State* v. *Revelo*, supra, 256 Conn. 494.

Our reading of *Revelo* reveals that it lends no support to the defendant's argument. In fact, *Revelo* directly contradicts the defendant's claim by reaffirming the propriety of judicial participation in pretrial plea negotiations under circumstances identical to those in the present case. Our Supreme Court explained: "[T]his court expressly has approved judicial involvement in plea discussions when it is clear to all concerned parties that, *in the event a plea agreement is not reached*, the judge involved in the plea negotiations will play no role in the ensuing trial, including the imposition of sentence upon conviction. We first voiced our approval of this procedure in *State* v. *Niblack*, 220 Conn. 270, 596 A.2d 407 (1991), in which we stated: 'The plea negotiations involved an assistant state's attorney, defense counsel and eventually a judge who assisted the adversaries in reaching an agreement, which resulted in the court's recommendation of an aggregate sentence of fifty years on all charges. The judge was responsible for conducting plea negotiations and, *if an agreement was reached*, for holding a plea and sentencing hearing. *If negotiations were not successful*, however, a judge who was not involved in the plea negotiations would have presided at trial and pronounced sentence if the defendant were found guilty. We approve of the procedure followed in reaching the plea agreement.' Id., 280. This court subsequently has reaffirmed the propriety of this procedure, noting that '[a]s long as the defendant is free to reject the plea offer [made after negotiations conducted by one judge] and go to trial before a [second] judge who was not involved in or aware of those negotiations, [the defendant] is not subject to any undue pressure to agree to the plea agreement, and the impartiality of the judge who will sentence him in the event of conviction after trial is not compromised.' *Safford* v. *Warden*, [223 Conn. 180, 194 n.16, 612 A.2d 1161 (1992)]." (Emphasis added; footnote omitted.) *State* v. *Revelo*, supra, 256 Conn. 506–508.

*Revelo* draws a clear distinction between a trial court's participation in successful plea negotiations between the state and defendant, and a trial court's participation in unsuccessful plea negotiations. Only in the latter circumstance is the court that participated in plea discussions precluded from sentencing the defendant. A trial court is not precluded from sentencing a defendant when his or her conviction results from successful plea negotiations. Id., 506–507.

In his second motion to correct an illegal sentence, the defendant explicitly alleges that "the judicial authority . . . participated in plea negotiation discussions with the defendant's attorney which resulted in the

defendant pleading guilty to the judge's plea offer of [nineteen] years to the charge of manslaughter [in the] first degree." Because that type of arrangement is unequivocally sanctioned by *Revelo*, it cannot provide the trial court with a basis to "correct" the defendant's sentence. Thus, because the defendant has failed to articulate a colorable ground on which the court could invoke its limited jurisdiction to determine whether the sentence was imposed in an illegal manner, we agree that the court properly dismissed the defendant's motions to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the record does not contain any indication that the defendant pleaded guilty pursuant to the *Alford* doctrine. See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "When a defendant enters a plea pursuant to the *Alford* doctrine, he does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *T.D.*, 286 Conn. 353, 364 n.8, 944 A.2d 288 (2008). Accordingly, although the record does not contain a transcript of the plea and canvass proceeding, we assume that the defendant admitted the truth of the underlying facts that gave rise to the prosecution during that canvass.

[2] The defendant also claimed in this motion that his sentence was illegal because the information filed by the state did not allege conduct constituting the offense of manslaughter in the first degree. The defendant does not appeal from the trial court's dismissal of that claim.

[3] The state argues that the defendant's claims are not subject to review because he has failed to challenge all of the grounds on which the trial court based its ruling. Specifically, the state contends that because the court concluded both that it lacked jurisdiction and that the defendant's claims failed on their merits, and the defendant only challenges one of these determinations with respect to each motion (the trial court's jurisdictional determination in the first motion and the court's merits determination in the second motion), this court is unable to provide him with any relief.

We conclude, however, that the defendant's appellate brief, although not structured in the most artful or precise manner, adequately addresses both the jurisdictional conclusions and the merit determinations made by the trial court in dismissing his motions to correct an illegal sentence. Moreover, we observe that insofar as the trial court opined on the merits of the defendant's claims after determining that it lacked jurisdiction to adjudicate his motions, it was not necessary for it to do so, and that portion of its decision cannot provide a basis on which to affirm its judgment. See *State* v. *Abraham*, 152 Conn. App. 709, 724, 99 A.3d 1258 (2014) ("Because jurisdiction implicates a court's ability to act, the court should have considered the merits of the defendant's claim only if its preliminary determination—as to whether the claim fell within one of the four common-law categories that permit a trial court to modify a criminal judgment after the sentence has been executed—was resolved in favor of an exercise of its jurisdiction. . . . Once the court found that it lacked subject matter jurisdiction, any ruling on the merits of the defendant's motion was improper." [Citation omitted.]).

[4] "In *Brady*, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Internal quotation marks omitted.) *State* v. *Skakel*, 276 Conn. 633, 699–700, 888 A.2d 985, cert. denied, 549 U.S. 1030, 127 S. Ct. 578, 166 L. Ed. 2d 428 (2006).

[5] We note that the trial court based its determination that it lacked jurisdiction on the fact that the defendant's motion to correct addressed the actions of the prosecutor and not the sentencing court's actions. Specifically, the court relied on our decision in *State* v. *Pierce*, 129 Conn. App. 516, 524–26, 21 A.3d 877, cert. denied, 302 Conn. 915, 27 A.3d 368 (2011), in which we held that the defendant's motion to correct an illegal sentence failed to invoke the jurisdiction of the trial court because it focused primarily on the conduct of the probation department in preparing his presentence investiga-

tion report and not the sentencing court's actions. Although *Pierce* is factually distinguishable from the present case, we nonetheless conclude that the court's analysis in *Pierce* is instructive with respect to whether the conduct of a party other than the sentencing court may render a sentence illegal. We note that in the present case, the defendant makes no claim that the sentencing court prevented him from speaking in mitigation of his sentence, nor does he claim that the sentencing court was aware of and declined to act on the state's alleged *Brady* violation.

---